IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


ABDUL RAHIM MUHAMMAD, et al. :    CIVIL ACTION
                                :
        v.                      :
                                :
UNITED STATES OF AMERICA        :    NO.  11-5785



<u>MEMORANDUM</u>

McLaughlin, J.                                    August 6, 2012

        This action arises from a warrantless entry and search
of the plaintiffs' home.  Pursuant to the Federal Tort Claims Act
("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, Abdul Rahim Muhammad,
Sharon Muhammad, Kharee Muhammad, and Tanasia Edmunds, brought
Pennsylvania tort law claims against the United States.  The
government has moved to dismiss the complaint for lack of subject
matter jurisdiction and for failure to state a claim.[1] The
plaintiffs have agreed to the dismissal of their detention and
reckless conduct claims.  The remaining FTCA claims are for
unlawful entry and search, trespass, invasion of privacy, false
imprisonment, and assault and battery.  The Court will grant the
motion in part and will dismiss the claims of unlawful entry and
search, and trespass as to all plaintiffs, and false

---

[1] The plaintiffs have agreed to the dismissal of all their
Bivens claims.  John Doe #1's motion to dismiss was granted by
this Court on May 9, 2012.  Therefore, the United States is the
only remaining defendant in this action.  <u>See</u> 28 U.S.C. § 2679
(The United States should be substituted as the only proper
defendant in FTCA actions).

imprisonment, and assault and battery as to Abdul Rahim Muhammad and Sharon Muhammad.  The Court will otherwise deny the motion.


I.    Factual Background[2]

        Around 9:30 AM on August 5, 2010, four FBI or other federal law enforcement agents arrived at the plaintiffs' residence at 4449 Germantown Avenue in search of a fugitive, Kevin Miller, for whom they had an arrest warrant.  Am. Compl. ¶¶ 12, 14, 15.  At the time, only Abdul and Sharon Muhammad's son, Kharee Muhammad, and their 17-year-old granddaughter, Tanasia Edmunds, were at home.  Id. ¶ 17.  The federal agents entered the premises without consent or a search warrant.   Id. ¶¶ 14, 17, 19.  Instead of informing the plaintiffs of their reasons for the entry and search, the federal agents stated that they were FBI agents and did not need a warrant.  They eventually entered the residence using force and threats of force.  Id. ¶¶ 16, 17.

        After securing entry, the federal agents detained Tanasia Edmunds, and "forcibly seized, detained, and handcuffed" Kharee Muhammad, who was also thrown to the ground.  Id. ¶ 17. While conducting the search, the agents searched areas of the

---

        [2] The facts are derived from the plaintiffs' amended complaint.  See Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991) (stating that in ruling on a motion to dismiss, the court must accept as true all the factual allegations in the amended complaint and draw from them all reasonable inferences).

residence in which the fugitive could not have been hiding, such as the freezer compartment of the refrigerator and dresser drawers.  <u>Id.</u> ¶ 18.  Ultimately, the agents did not find Kevin Miller, and left the premises in a "state of disarray, with personal property tossed throughout the residence."  <u>Id.</u> ¶¶ 15, 18.  The plaintiffs then brought this action, alleging that the federal agents had no reasonable cause to believe Kevin Miller lived in or was on the premises at the time of the search, had no legal grounds to enter and search the premises, and had sufficient time to obtain a search warrant.  <u>Id.</u> ¶¶ 14-15.

II.  Analysis

     A.   The Federal Tort Claims Act Framework

     The United States can only be sued insofar as it has waived its sovereign immunity by consenting to suit.  F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).  The FTCA is a limited congressional abrogation of sovereign immunity that confers jurisdiction upon the district courts to hear claims arising from the tortious conduct of federal employees.  28 U.S.C. § 1346(b)(1). For a claim to be actionable under § 1346(b)(1), the claim has to be "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or for personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope

of his office or employment, [6] under circumstances where the
United States, if a private person, would be liable to the
claimant in accordance with the law of the place where the act or
omission occurred."  F.D.I.C., 510 U.S. at 477 (citing 28 U.S.C.
§ 1346(b)).  Waivers of immunity "must be strictly construed in
favor of the United States."  United States v. Idaho ex rel.
Dir., Idaho Dept. Of Water Res., 508 U.S. 1, 7 (1993).


    B.   <u>Adequate Pleading</u>

      The government first contends that the plaintiffs' FTCA
claims should be dismissed under Rule 12(b)(6) because the
amended complaint does not meet the federal pleading standard.[3]
The government argues that the complaint does not specify which
plaintiffs were the alleged victims of which torts.

      In <u>Ashcroft v. Iqbal</u>, The Supreme Court made clear that
in order "[t]o survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to state a
claim to relief that is plausible on its face."  556 U.S. 662,
678 (2009)(internal citation omitted); <u>see also</u> <u>Fowler v. UPMC
Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)(stating a two-part
analysis in which the Court must first separate out and accept as
true all of the complaint's well-pleaded facts, and then

---

    [3] The pleading must contain "a short and plain statement of
the claim showing that the pleader is entitled to relief."  FED.
R. CIV. P. 8(a)(2).

determine whether the alleged facts "are sufficient to show that the plaintiff has a plausible claim for relief.") (internal citation omitted).  "[D]etailed factual allegations" are not required.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  The plaintiff, however, must plead "factual content that allows the [court, based on its judicial experience and common sense,] to draw a reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 664, 678-79.

The Court finds that the amended complaint, by grouping all four plaintiffs together, suggests that each of the plaintiffs was an alleged victim of the federal agents' actions. Furthermore, the complaint alleges facts that, taken to be true, meet the facial plausibility standard.  For instance, it alleges that the law enforcement officers were federal agents, that they entered and searched the plaintiffs' residence without a search warrant, that they threw to the ground, handcuffed and detained Kharee Muhammad, and that they searched areas in which a fugitive could not have been hiding, such as dresser drawers and the freezer.  Thus, the Court will deny the government's motion to dismiss the entire complaint on the basis that it fails to meet the federal pleading standard.

C.   <u>Exhaustion of Administrative Remedies</u>

The government further seeks dismissal, under Fed. R. Civ. P. 12(b)(1), of the false imprisonment and assault and battery claims for failure to exhaust administrative remedies. The FTCA's exhaustion requirement is "jurisdictional and cannot be waived."  <u>Lightfoot v. United States</u>, 564 F.3d 625, 627 (3d Cir. 2009) (internal citation omitted).  The FTCA provides that in order for the district courts to have subject matter jurisdiction over a claim, the plaintiffs must first have presented a written notice of the administrative tort claim to the appropriate government agency and have had the claim "finally denied by the agency in writing."  28 U.S.C. § 2675(a).  Pursuant to § 2675(a), the plaintiffs have submitted their administrative tort claims to the FBI on October 28, 2010.  <u>See</u> Am. Compl. Ex. B (administrative record).  These claims were denied on April 21, 2011.  Am. Compl. ¶ 4.

The Third Circuit has stated that § 2675(a) is satisfied as long as the administrative claim 1) provided sufficient "minimal notice" for the agency to properly investigate the incident and 2) placed a value on the claim. <u>Tucker v. U.S. Postal Serv.</u>, 676 F.2d 954, 958-59 (3d Cir. 1982). While notice does not require the claim to "propound every possible theory of liability," a plaintiff also "cannot present one claim to the agency and then maintain suit on the

basis of a different set of facts."  Roma v. United States, 344
F.3d 352, 362 (3d Cir. 2003) (internal citation omitted).

      The government asserts that because the handcuffing of
Kharee Muhammad underlies the assault and battery claims, the
plaintiffs' failure to include it in their administrative claims
precludes their exhaustion.  The government relies on Roma to
argue that because the plaintiffs' administrative claim did not
include all of the facts alleged in the amended complaint, the
plaintiffs are now seeking recovery based on a different set of
facts.[4]  In Roma, the plaintiff alleged in his administrative
claim that he was injured after being negligently instructed by
government officials to remove his breathing apparatus while on
duty as a firefighter.  344 F.3d at 359.  However, his subsequent
lawsuit was based on the theory that government agents were
negligent in failing to prevent the fire.  Id. at 363.  The Court
of Appeals concluded that the plaintiff's administrative claim
did not satisfy § 2675(a) because it "did not provide any notice
to the United States that it not only had to investigate the way
the firefighting was handled by federal employees, but that it

--------

[4] The following facts from the amended complaint were not
included in the administrative claim:  1) Kharee Muhammad was
handcuffed, 2) the agents did not tell the plaintiffs the legal
justification for their search, 3) the agents searched areas
where a fugitive could not have been hiding (although the
administrative claim does state the agents conducted a "full
search"), and 4) the agents left the residence in a "state of
disarray."  Def.''s Mem. at 6; see also Am. Compl. Ex. B
(plaintiffs' administrative claims).

also had to engage in a much broader investigation concerning whether the negligence of other, non-firefighter, federal employees may have contributed to the start of the fire itself." Id.

This case is distinguishable from Roma.  Unlike the new and distinct theory the plaintiff in Roma asserted in his suit, the additional theories of liability (false imprisonment, assault, and battery) in this case would not have required a broader investigation than that originally required by the administrative claim.  All of the plaintiffs' causes of action arose from the same set of facts, having to do with the federal agents' unlawful entry, search, and detention.  The allegations in the administrative claim, which provided the FBI with minimal notice and an opportunity to investigate the incident, have not changed and now provide the basis for this suit.

The Court finds that the plaintiffs have satisfied the Tucker two-prong test.  Notwithstanding the additional facts in the amended complaint, the plaintiffs have satisfied the minimal notice prong.[5]  The plaintiffs have alleged sufficient facts

---

[5] At oral argument, the plaintiffs argued that the letter they submitted should be admissible to show that the FBI was satisfied with the information presented in the administrative claim.  The letter, attached as Exhibit A to their reply memorandum, was sent from the FBI to plaintiffs' counsel, asking him to re-submit the plaintiffs' Form 95s along with his Retainer Agreement.  In conducting a 12(b)(1) analysis, as is the case when evaluating a failure to exhaust argument, the Court can examine evidence outside the pleadings to resolve factual issues

about the incident that would have allowed the FBI to investigate the incident, question the agents, and determine the claim's settlement potential.  For instance, their administrative claim alleged that the FBI agents broke into and searched their home without a search warrant, held plaintiffs Kharee Muhammad and Tanasia Edmunds at gun-point, and did not have probable cause to believe that the fugitive was in the residence.  The plaintiffs have also satisfied the second prong of placing a value on the claim by requesting damages for personal injuries ($30,000 each for Abdul and Sharon Muhammad and $45,000 each for Kharee Muhammad and Tanasia Edmund).  See id.; Am. Compl. Ex. B. Therefore, the Court will deny the government's motion to dismiss the false imprisonment and assault and battery claims for failure to exhaust administrative remedies.

     D.   Discretionary Function Exception

     The government's third asserted ground for dismissal is the discretionary function exception, which provides that the United States is immune from suits based on the acts of government employees when these acts are discretionary in nature.

---

bearing on jurisdiction.  See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  However, because the plaintiffs have satisfied the Tucker two-prong test, the Court does not find it necessary to consider the letter, as it does not resolve any factual issues that are material to the Court's decision.

<u>See</u> 28 U.S.C. § 2680(a) (stating that the FTCA's waiver of sovereign immunity does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused"). A claim that falls within the discretionary function exception must be dismissed for lack of subject matter jurisdiction. <u>See</u> <u>Berkovitz by Berkovitz v. United States</u>, 486 U.S. 531, 533 (1988).

In <u>Berkovitz</u>, the Supreme Court laid out a two-prong inquiry for determining the applicability of the discretionary function exception. <u>See</u> <u>id.</u> at 536. First, the district court must determine whether the challenged conduct has an element of judgment or choice. <u>Id.</u> There is no judgment or choice if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." <u>Id.</u> Next, assuming that the conduct involves an element of judgment, the court must determine whether that judgment is based on considerations of public policy, and therefore, the kind that Congress intended to shield from judicial second-guessing. <u>Id.</u> at 536-37.

Whether the discretionary function exception is implicated depends on the nature of the conduct, not the status of the actor. <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 813 (1984). The

10

government bears the burden of proving the applicability of the discretionary function exception, including the necessary jurisdictional facts.  S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 344-45 (3d .Cir. 2012).

The government argues that the discretionary function exception bars the plaintiffs' claims because they arose from the FBI's investigation, which the Third Circuit has deemed a discretionary activity.  See Pooler v. United States, 787 F.2d 868, 871 (3d Cir. 1986) (noting that "Congress did not intend to provide for judicial review of the quality of investigative efforts").  In response, the plaintiffs argue that they are not basing their claims on the FBI's investigation, but on their entry and search, which was done without a search warrant, in violation of their Fourth Amendment rights.  See Steagald v. United States, 451 U.S. 204, 205-06 (1981) (holding that absent consent or exigent circumstances, law enforcement officers cannot legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant).

Whether the plaintiffs' claims are "based upon" the FBI's investigation or the entry and search is to be decided as a matter of law by the Court.  Fisher Bros. Sales, Inc. v. United States, 46 F.3d 279, 286 (3d Cir. 1995).  The Third Circuit has clarified that a claim is "based upon" the exercise of a discretionary function "whenever the immediate cause of the

11

plaintiff's injury is a decision which is susceptible of policy analysis and which is made by an official legally authorized to make it." Id. at 282.

The Court finds that the plaintiffs' claims are not based upon the initial investigation but upon the subsequent warrantless entry and search. See Indian Towing Co. v. United States, 350 U.S. 61, 69 (1955) (holding that the United States could be liable under the FTCA for the negligent operation of a lighthouse despite the fact that the initial decision to undertake the lighthouse service was discretionary). Thus, the discretionary function exception cannot shield the United States from liability here, since it is well established that the discretionary function exception does not apply to constitutional violations. See U.S. Fid. & Guar. Co. v. United States, 837 F.2d 116, 120 (3d Cir. 1988) (stating that "[f]ederal officials do not possess discretion to violate constitutional rights"); see also Pooler, 787 F.2d at 871 (pointing out that the outcome would have been different if the complaint was that the government agents violated constitutional rights in the course of an investigation).

At oral argument, the government suggested that the plaintiffs' constitutional argument does not preclude the applicability of the discretionary function exception because there was no constitutional violation. The government asserted

that John Doe's declaration[6] establishes the existence of exigent circumstances and probable cause that would have justified the warrantless entry and search.[7]   The government argued that John Doe's declaration is admissible because when conducting a 12(b)(1) analysis, the Court does not have to accept the allegations in the complaint as true but can consider evidence outside the pleadings.

The government is correct that the Court can make an independent determination of the facts when ruling on a 12(b)(1) motion.  See S.R.P. ex rel. Abundabba v. United States, 676 F.3d 329, 343 (3d Cir. 2012) (stating that "[t]he district court is the ultimate finder of fact on the jurisdictional question").  But the Court does not find it appropriate to consider the declaration at this time.  Not only was John Doe's declaration not attached to the government's motion,[8] but the government's

---

[6]   The declaration was not filed with this motion, but attached as Exhibit B to individual defendant John Doe #1's motion to dismiss.  See ECF No. 15 Ex. B ("John Doe Decl.").

[7]   In John Doe #1's declaration, he suggests there were exigent circumstances and probable cause by stating the following: 1) the FBI tracked Miller's cell phone signal to the plaintiffs' residence at 4449 Germantown Ave.; 2) there was a possibility that Kevin Miller could flee; 3) one of his colleagues saw an African American male, who resembled Miller, through an upstairs window; and 4) Tanasia Edmunds's response that "she could not open the door because she was locked inside and did not have a key" was suspicious and raised concerns that she was either trying to assist Kevin Miller or was endangered by him.  See John Doe Decl. ¶¶ 5, 6, 9, 10, 11.

[8]   The government mentioned John Doe #1's declaration in a footnote.  See Def.'s Mem. at 1 n.1.

brief accepted as true all the facts as alleged in the plaintiffs' amended complaint.  <u>See</u> Def.'s Mem. at 2 n.2. According to the Third Circuit, if the defendant does not challenge the plaintiff's alleged facts, then "the court may rule on the motion by accepting the allegations as true."  <u>Gould Elec., Inc. v. United States</u>, 220 F.3d 169, 177 (3d Cir. 2000); <u>see also</u> <u>Fisher Bros.</u>, 46 F.3d at 282 ("For the purpose of our [discretionary function] analysis, we have assumed the facts alleged by the plaintiffs to be true.").  The first time the government attacked the facts in the amended complaint was at oral argument.

In addition, the existence of exigent circumstances is not a jurisdictional fact that goes to the applicability of the discretionary function exception.  In cases where courts have held hearings and admitted evidence outside the pleadings to determine jurisdictional facts, those jurisdictional facts went to whether the challenged act was of a discretionary nature. <u>See, e.g.,</u> <u>Gotha v. United States</u>, 115 F.3d 176, 181 (3d Cir. 1997) (stating that the district court relied on an affidavit from the government in concluding that policy considerations were present in the Navy's action).  Here, the government does not dispute that the FBI agents had no discretion to violate the Constitution.  Therefore, it has failed to prove the

applicability of the discretionary function exception at step one of the Berkovitz two-step inquiry.

Finally, even considering the factual assertions in John Doe's declaration, at best, the declaration raises disputes of material fact that cannot be resolved without discovery.  For instance, while John Doe stated that he thought law enforcement entered the residence with the consent of the plaintiffs, the plaintiffs alleged that they did not consent to the entry and search.  Also, while John Doe stated that he thought plaintiff Tanasia Edmunds was either helping the fugitive or endangered by him, the plaintiffs alleged that the fugitive was not on their property that day.  The plaintiffs further alleged that the federal agents had sufficient time to obtain a search warrant. John Doe's declaration did not describe the timing of the FBI's actions prior to the entry.  Thus, the government has not met its burden of proving the applicability of the discretionary function exception, and the Court will not grant its motion on this basis.


        E.   Specific Tort Claims

        The FTCA does not create any new causes of action. Rather, the government's tort liability is predicated on the law of the state where the event giving rise to liability occurred. F.D.I.C., 510 U.S. at 477.  In this case, the United States will be liable, if at all, in the same manner and to the same extent

as a private individual under like circumstances, in accordance with Pennsylvania's tort law. See 28 U.S.C. § 2674; Molzof v. United States, 502 U.S. 301, 305 (1992). Ultimately, the plaintiffs bear the burden of "demonstrating that [their] claims fall within the scope of the FTCA's waiver of government immunity." Merando v. United States, 517 F.3d 160, 164 (3d Cir. 2008). Without satisfying § 1346(b)(1)'s six elements, a claim is not cognizable, and this Court must dismiss it for lack of subject matter jurisdiction. CNA v. United States, 535 F.3d 132, 141, 145 (3d Cir. 2008).

### 1.   Unlawful Entry and Search

The government makes several arguments in support of its motion to dismiss the unlawful entry and search claim. The Court does not find it necessary to address all of the parties' arguments. The plaintiffs' failure to satisfy § 1346(b)(1)'s private person liability requirement warrants a 12(b)(1) dismissal of their unlawful entry and search claim. See CNA, 535 F.3d at 141.

Because the plaintiffs could not meet their burden of establishing that "unlawful entry and search" is a recognized common law tort, they have asserted it as a state constitutional tort. See Moore v. City of Philadelphia, 571 A.2d 518, 520 (Pa. Commw. Ct. 1990) (stating that the plaintiffs' unlawful search

claim was brought as a state constitutional violation).  Even assuming, as the plaintiffs have argued, that "unlawful entry and search" is a recognized constitutional tort under Pennsylvania law and that the United States can be liable for state constitutional torts under the FTCA, the plaintiffs still would not be able to establish jurisdiction.

There is no private person analog for which the government can be liable.  To qualify under the FTCA's jurisdictional grant, the plaintiffs must identify some basis in the relevant state law for holding a private person liable for an unlawful entry and search.  See 28 U.S.C. § 1346(b)(1); CNA, 535 F.3d at 141.  Here, the plaintiffs have identified the relevant state law as Article 1, § 8 of the Pennsylvania Constitution.  However, Article 1, § 8 only restricts the conduct of state actors, not private entities.  Consequently, there can be no private person liability.  See United States v. Olson, 546 U.S. 43, 46 (2005) (rejecting the premise that a plaintiff can "base liability solely upon the fact that a State would impose liability upon a [state governmental] entity") (emphasis in original).

The plaintiffs make two arguments with respect to the private person liability requirement.  They first argue that the FTCA specifically states that the United States shall be liable "in the same manner and to the same extent as a private

17

individual under like circumstances."  28 U.S.C. § 2674.  The plaintiffs assert that Congress's purpose in using the phrase "like circumstances" was to make clear that the FTCA would not preclude liability simply because the act at issue involved the exercise of a uniquely governmental function.  The plaintiffs have asked the Court to find a broader analogy for their unlawful entry and search claim, reasoning that private individuals could also be liable if they impermissibly entered and searched another's home.

The plaintiffs are right that private individuals could be liable for entering, searching, and trespassing onto another's property without permission.  However, the broader analogy in this case still would not translate into a tort claim for unlawful entry and search.  The Court is simply not free to derive analogs from instances where *only* state law enforcement officers would be liable under state law.  See Olson, 546 U.S. at 46 (holding that the federal government does not waive its immunity where there is no private counterpart, even when uniquely governmental functions are involved).  Rather, the Court finds that the appropriate and analogous substitutes for the plaintiffs' unlawful entry and search claim are the already asserted causes of action for trespass, invasion of privacy and false imprisonment.

The plaintiffs further argue that the addition of § 2680(h), the intentional tort proviso, in 1974 indicates Congress's intention to make all state torts stemming from illegal searches and arrests actionable under the FTCA.  The flaw in this argument is that the addition of § 2680(h) did not abrogate § 1346(b)(1), which includes the private person liability requirement.  See 28 U.S.C. § 2680(h) (stating that any actionable intentional torts committed by investigative or law enforcement officers must still fall within the provisions of § 1346(b)).  In fact, § 2680 was intended to limit, not expand, the federal courts' subject matter jurisdiction by excluding certain claims from § 1346(b)(1)'s waiver of sovereign immunity. Accordingly, the Court will dismiss the unlawful entry and search claim for lack of subject matter jurisdiction.

2.   Trespass

The government argues that the trespass claim should be dismissed because trespass is a strict liability tort under Pennsylvania law and the FTCA has not waived the United States' immunity as to strict liability claims.  The first proposition comes from the Third Circuit's decision in Boring v. Google Inc. See 362 F. App'x 273, 280 (3d Cir. 2010) (applying Pennsylvania law).  While Boring is non-precedential, its reasoning is congruent with the definition of trespass under Pennsylvania law.

The Pennsylvania Supreme court, adopting the Restatement, has defined trespass as an "unprivileged, intentional intrusion upon land in possession of another." Kopka v. Bell Tel. Co., 91 A.2d 232, 235 (Pa. 1952); see also Restatement (Second) of Torts § 232, 158(a) (stating that one is subject to liability to another for trespass if he intentionally enters land in the possession of the other).  Because a defendant need not have the purpose or intent of committing an unlawful trespass, trespass is appropriately defined as a strict liability tort.  See Restatement (Second) of Torts § 163 cmt. c.

     The government's second proposition that the government is immune from strict liability torts is also established.  See 28 U.S.C. § 1346(b)(1) (the FTCA only waives sovereign immunity for claims involving a "negligent or wrongful act or omission"); Laird v. Nelms, 406 U.S. 797, 799 (1972) ("[T]he Federal Tort Claims Act itself precludes the imposition of liability if there has been no negligence or other form of misfeasance or nonfeasance on the part of the Government.") (internal citation omitted).

     At oral argument, the plaintiffs conceded that they could not bring trespass as a strict liability claim.  Rather, their position was that as long as they were willing to prove mental culpability, their trespass claim was still actionable.

Thus, they seek to bring the trespass claim as either reckless or negligent trespass.

The Restatement does recognize negligent and reckless trespasses. See Restatement (Second) of Torts § 165 (titled "Liability for Intrusions Resulting from Reckless or Negligent Conduct and Abnormally Dangerous Activities"). Additionally, the Pennsylvania state courts have cited to the Restatement favorably when deciding trespass related issues. See, e.g., Curry Coal Co. v. M. C. Arnoni Co., 266 A.2d 678 (Pa. 1970); Valley Forge Gardens, Inc. v. James D. Morrissey, Inc., 123 A.2d 888 (Pa. 1956); Kopka, 91 A.2d 232. However, § 165 does not apply to the facts of this case. Negligent and reckless trespasses generally involve either "an unreasonable risk of invading the possessor's interest" or an abnormally dangerous activity. See Restatement (Second) of Torts § 165 cmt. a. Consequently, "[a] purely harmless intrusion which is the result of negligence or even of reckless conduct on the part of the actor . . . does not create liability for trespass." Id. cmt. c.

Consequently, the Court holds that the plaintiffs have not stated a claim for reckless or negligent trespass. Their amended complaint alleges that the agents "planned and authorized the entry and search," making it clear that the law enforcement officers intentionally entered the plaintiffs' property, with the purpose of arresting the fugitive. See Am. Compl. ¶ 1. Their

facts fit within the Restatement section pertaining to intentional trespasses, not negligent or reckless trespasses. Negligent or reckless trespass is not the same as an intentional trespass that resulted from a negligent or reckless investigation.  Therefore, to the extent that the plaintiffs are asserting a negligent or reckless trespass, their claims will be dismissed for failure to state a claim.  To the extent that they are asserting an intentional trespass, which is a strict liability claim, the Court will grant the motion to dismiss for lack of subject matter jurisdiction.

3.   <u>Invasion of Privacy</u>

As both parties recognize, invasion of privacy is an actionable tort under Pennsylvania common law.  Under Pennsylvania law, there are four tort claims based on invasion of privacy:  1) intrusion upon seclusion; 2) appropriation of name or likeness; 3) publicity given to private life; and 4) publicity placing a person in a false light.  <u>Santillo v. Reedel</u>, 634 A.2d 264, 266 (Pa. Super. Ct. 1993).  The plaintiffs have made clear that they are proceeding on the theory of "intrusion upon seclusion."

In requesting a 12(b)(6) dismissal, the government first argues that the invasion of privacy tort does not apply to the circumstances of this case.  The Court disagrees.  Under

Pennsylvania law, intrusion upon seclusion may occur by: 1) physical intrusion into a place where the plaintiff has secluded himself, 2) use of the defendant's senses to oversee or overhear the plaintiff's private affairs, or 3) some other form of investigation or examination into plaintiff's private concerns.  Harris by Harris v. Easton Pub. Co., 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984) (citing Restatement (Second) of Torts § 652B, cmt. b).  "An action pursuant to [§ 652B] does not depend upon any publicity given to the person whose interest is invaded or to his affairs."  Restatement (Second) of Torts § 652B, cmt. a.  According to the illustrations in the Restatement, a warrantless search of a home qualifies as a physical intrusion into a place where the plaintiff has secluded himself.  Restatement (Second) of Torts § 652B.  Here, it was alleged that the federal agents physically intruded into and conducted an invasive and overbroad search of the plaintiffs' home.  Under these circumstances, the Court finds the intrusion upon seclusion claim applicable.

        The government further argues that the plaintiffs have failed to allege the elements of an intrusion upon seclusion claim.  To state a claim for intrusion upon seclusion in Pennsylvania, the plaintiffs must allege conduct amounting to "an intentional intrusion upon the seclusion of their private affairs which was substantial and highly offensive to a reasonable

person."   Pro Golf. Mfg., Inc. v. Tribune Review Newspaper Co.,
809 A.2d 243, 247 (Pa. 2002).  In predicting how the Pennsylvania
Supreme Court would define "intentional," the Third Circuit has
concluded, "an actor commits an *intentional* intrusion only if he
believes, or is substantially certain, that he lacks the
necessary legal or personal permission to commit the intrusive
act."  O'Donnell v. United States, 891 F.2d 1079, 1083 (3d Cir.
1989).

      The Court holds that the plaintiffs have stated a claim
for intrusion upon seclusion. The plaintiffs' amended complaint
alleges that the federal agents forcibly entered into their home
without consent or a search warrant, handcuffed Kharee Muhammad,
and searched areas in which the fugitive could not have been
hiding.  Whether the plaintiffs have stated a claim for intrusion
upon seclusion turns on whether these allegations are sufficient
to establish that the intrusion would be "substantial and highly
offensive to a reasonable person."  Id.  This issue cannot be
decided as a matter of law at this point.  Additionally, the
plaintiffs have adequately pled that the intrusion was
intentional by alleging that the officers entered and searched
their home without consent or a search warrant.  These
allegations suggest that the FBI agents might have believed that
they were not privileged to commit the intrusive act.

Finally, the right to privacy is a qualified right, and "must bow to a reasonable exercise of the police power." <u>Lynch v. Johnston</u>, 463 A.2d 87, 89 (Pa. Commw. Ct. 1983).  Therefore, to be actionable, the invasion must be unlawful.  <u>Id.</u> Here, whether the invasion of privacy was unlawful depends on whether there were exigent circumstances and probable cause to justify the agents' warrantless entry and search.  As stated previously, this issue cannot be decided at this stage and the Court will deny the government's motion to dismiss the invasion of privacy claim.

    4.   <u>False Imprisonment and Assault and Battery</u>

The Court has already rejected the government's first argument that these intentional tort claims[9] should be dismissed for failure to exhaust administrative remedies.  The Court will also reject the government's second argument that these claims should be dismissed because the complaint does not allege anything to suggest that the officers went beyond "standard

---

[9] While intentional torts are generally not actionable under the FTCA, the intentional tort proviso provides that false imprisonment and assault and battery are actionable if committed by an "investigative or law enforcement officer."  28 U.S.C. § 2680(h).  "Investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law."  28 U.S.C. § 2680(h).  Because FBI agents are law enforcement officers, the plaintiffs' false imprisonment and assault and battery claims are not barred here.

protective procedures" in attempting to ensure everyone's safety while trying to "locate and apprehend a fugitive wanted for murder."  Def.'s Reply Mem. at 11.  In arguing that the officers were entitled to use reasonable force to detain and handcuff the occupants in order to maintain control of the situation, the government cites <u>Torres v. United States</u>.  <u>See</u> 200 F.3d 179, 185 (3d Cir. 1999) (stating that the "Supreme Court has held that officers executing a search warrant lawfully may restrain persons present at the searched premises").

There are two major problems with the government's argument.  First, the officers in <u>Torres</u> had search warrants, a distinction the government recognizes.  <u>See</u> Def.'s Reply Mem. at 12 n.9.  More importantly, that the agents went beyond standard law enforcement procedures is not an element of a false imprisonment claim.  Therefore, the plaintiffs did not have to plead this in order to have stated a claim for false imprisonment.

To state a claim for false imprisonment under Pennsylvania law, the plaintiffs only need to show that 1) they were detained and 2) the detention was unlawful.[10]  <u>Renk v. City of Pittsburgh</u>, 641 A.2d 289, 293 (Pa. 1994).  The Court holds that the plaintiffs have sufficiently pled the elements of this

---

[10] The lawfulness of the detention turns on the existence of exigent circumstances, which cannot be decided at this stage.

tort by alleging that the law enforcement officers unlawfully seized and detained them while conducting the search.

Turning to assault and battery, the government's argument that the plaintiffs did not plead that the FBI agents went beyond standard law enforcement procedures is similarly unavailing.  As defined by Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."  Renk, 641 A.2d at 293.  The Pennsylvania Supreme Court has held that whether a law enforcement officer's conduct constitutes assault and battery depends on the reasonableness of the force used.  Renk, 641 A.2d at 293.  In other words, "unnecessary or excessive" force, as determined by the fact finder, may result in liability.  Id.

Here, the Court finds that the plaintiffs have adequately pled the elements of an assault and battery claim.  Namely, they have alleged that the federal law enforcement agents: 1) forcibly entered and searched the residence without a search warrant; 2) intentionally seized, threw to the ground and handcuffed Kharee Muhammad; and 3) detained both Kharee Muhammad and Tanasia Edmunds.  Because it remains to be established whether the force used by the agents in detaining Kharee Muhammad

and Tanasia Edmunds was "reasonable" under the circumstances, it would be premature to dismiss the assault and battery claims.

However, the Court will grant the government's motion to dismiss the false imprisonment and assault and battery claims as to plaintiffs Abdul and Sharon Muhammad.  The amended complaint acknowledges that Abdul and Sharon Muhammad were not at home when the incident took place, and the plaintiffs have agreed to the dismissal of these claims for failure to state a claim.

An appropriate order will issue separately.